UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RAYMOND ALLEN REDWINE,

    Plaintiff,

  v.

M.E. SPEARMAN, et. al.,

    Defendants.

Case No. 15-cv-3109-TEH

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Dkt. No. 23

    Plaintiff Raymond Redwine, a state prisoner, filed this pro se action under 42 U.S.C. § 1983. This case proceeds under the amended complaint (Docket No. 6) against Defendant Dr. Branch with allegations that she denied treatment for Plaintiff's medial epicondylitis, also known as golfer's elbow. Opposition at 30. Plaintiff only seeks injunctive relief, presumably either shock wave therapy or surgery. Defendant filed a motion for summary judgment. Plaintiff filed an opposition, and Defendant filed a reply. The Court has reviewed the motion for summary judgment and for the reasons that follow, Defendant's motion is GRANTED.

I

    Plaintiff, who is 46 years old, was incarcerated at Correctional Training Facility ("CTF") during the relevant time.[1] First Amended Complaint ("FAC") at 1; Motion for Summary Judgment

---

[1] The following facts, unless otherwise noted, are undisputed.

("MSJ"), Branch Decl. ¶ 3. Defendant was a doctor at CTF during the relevant time. MSJ, Branch Decl. ¶ 1.

Plaintiff started reporting elbow pain in November 2010. MSJ, Ex. B at AG0057. Plaintiff stated to a physician's assistant that exercising had caused his elbow pain. Id. at AG0008. Plaintiff was diagnosed with medial epicondylitis and provided 800 mg of Motrin, and an x-ray was ordered. Id. The x-ray was negative. Id. at AG0009.

People with epicondylitis feel pain between the inside portion of the elbow through to the palm side of the forearm. Branch Decl. ¶ 3. The pain is generally felt when bending the wrist toward the palm against resistance or when squeezing an object. Id. Epicondylitis is often caused by repetitive stress and is an injury seen in athletes or those engaging in repetitive physical activities. Id. Plaintiff has reported that his elbow hurts more after exercising, including doing pull-ups on a bar. MSJ, Ex B at AG0012. Plaintiff states that he has been typing thousands of words a day as he authors a book on an unknown subject. Id. at AG0031.

Treatments for epicondylitis are often conservative measures, such as rest, ice pack application, physical therapy, stretching and strengthening exercises, braces and anti-inflammatory medications. MSJ, Branch Decl. ¶ 4. Patients with medial epicondylitis may be given corticosteroid injections for pain relief. Id. Even with appropriate conservative measures, pain may linger for months or even years. Id. Some medical studies have assessed shock wave therapy as an additional treatment, but the evidence is inconclusive that there is any

2

1  long-term benefit, especially when compared to the more
2  conventional treatments.  Id.  Surgery is necessary only if
3  conservative treatment methods are consistently unsuccessful in
4  regaining functional mobility and if the surgery is likely to
5  result in an improved outcome.  In most patients, epicondylitis
6  resolves with conservative treatment at six months, but recovery
7  may take up to two years. Id.

8      Dr. Branch first examined Plaintiff in January 2011.  MSJ,
9  Ex B at AG0010.  Plaintiff stated that he had right elbow pain
10 for the last couple of months.  Id.  Dr. Branch recommended that
11 Plaintiff receive steroid injections.  Id.  Dr. Branch examined
12 Plaintiff a week later and Plaintiff stated that he felt pain
13 after doing his usual routine of 50 pull-ups and 300 burpees.[2]
14 Id. at AG0012.  Dr. Branch provided some stretching and
15 strengthening exercises for Plaintiff to perform, recommended an
16 elbow brace, and told Plaintiff to ice his elbow after exercise.
17 Id.

18     Dr. Branch saw Plaintiff again in March 2011.  Id. at
19 AG0013.  Plaintiff stated that his elbow pain was doing better
20 with the exercises and icing and he did not want the steroid
21 injection.  Id.

22     Dr. Branch treated Plaintiff next in November 2011, when
23 Plaintiff complained of more elbow pain.  Id. at AG0014.
24 Plaintiff stated that the prior treatment was not working, so Dr.

---

[2] Burpees are a full body exercise consisting of a series of repetitive movements: crouch down, kicking the feet out into a push-up position, bringing the feet back towards the hands, jumping upward and repeating the entire series.  MSJ, Branch Decl. ¶ 9.

3

Branch scheduled him for a steroid injection. Id. Plaintiff received the shot in March 2012 and reported two weeks later that it had not helped. Id. at AG0016-17. Dr. Branch told Plaintiff to keep taking ibuprofen and to use the elbow brace because medial epicondylitis can take a long time to improve. MSJ, Branch Decl. ¶ 10. In May 2012, Plaintiff lost his elbow brace and another one was provided. MSJ, Ex B at AG0070.

In June 2012, Plaintiff sought medical help for abdominal pain that he believed was a hernia. Id. at AG0071. Dr. Branch treated Plaintiff, who did not complain of any elbow pain. Id. at AG0021. Plaintiff sought treatment again in October and December 2012 for side pain, but said nothing about elbow pain. Id. at AG0022-23.

In February 2013, Plaintiff sought medical care stating his epicondylitis had returned. Id. at AG0024, AG0074. Plaintiff requested another steroid injection and stated that the prior injection had in fact helped. Id. at AG0024, AG0074. Dr. Branch scheduled another injection, which occurred in March 2013. Id. at AG0026, AG0074.

On May 8, 2013, Plaintiff had a medical appointment, during which he noted that the steroid injection had helped and Dr. Branch wrote that the epicondylitis had been resolved. Id. at AG0027. Plaintiff's primary concerns at this appointment were eye redness and abdominal pain. Id. Dr. Branch treated Plaintiff again in late May 2013 for abdominal pain. Id. at AG0028.

In July 2013, Plaintiff requested another steroid injection for the elbow pain. Id. at AG0029. Plaintiff stated that the steroid injections had helped, but afterward he was unable to do push-ups. Id. Dr. Branch prescribed a pain reliever, Sulindac, and told Plaintiff to avoid strenuous exercises. Id. The Sulindac was increased in September. Id. at AG0030.

Plaintiff had no more interactions with Dr. Branch for elbow pain for several months. MSJ, Branch Decl. ¶ 17. In March 2014, Plaintiff requested to be seen by a specialist to consider shock wave therapy or surgery.[3] MSJ, Ex G at AA003-005. Plaintiff admitted that the Sulindac helped but claimed there was still pain. Id. at AA005.

Dr. Branch examined Plaintiff in April 2014. According to the progress notes made at that time, Plaintiff stated that he was unable to do push-ups and pull-ups, but was walking five miles a day and typing 3000 words a day for a book he was writing. MSJ, Ex B at AG0031. However, Plaintiff disputes this, stating that he had been walking only five-quarter mile laps a day and writing 300 words per day, three or four days a week. Opposition (Docket No. 24) at 8. Dr. Branch noted that while Plaintiff was in pain, he continued to be functional given his walking, writing, and ability to perform the activities of daily living. MSJ, Branch Decl. ¶ 18. Dr. Branch cautioned against more aggressive and potentially hazardous treatments like surgery or narcotics. Id. Dr. Branch concluded that a specialist was not needed; counseled Plaintiff to avoid strenuous activities;

---

[3] Plaintiff states he read about shock wave therapy in a medical encyclopedia, but he has not included a copy of the material.

and renewed the Sulindac prescription for three more months. MSJ, Ex B at AG0031. Dr. Branch also referred Plaintiff for a psychological evaluation because he said the pain made him wish to commit suicide. Id.

On April 18, 2014, Plaintiff met with another health care provider to discuss the suicide statement. Id. at AG0032. Defendant contends that Plaintiff denied any pain or discomfort at this appointment. The health care provider recorded Plaintiff's pain level at that time as a zero out of ten, and that he denied any suicidal thoughts. Id. Plaintiff denies stating that he was not in pain; rather, Plaintiff claims he stated that it was a medical issue, not a mental health issue. Opposition at 12. Plaintiff states that he does not intend to kill himself immediately but that he will kill himself if he fails to convince the prison medical staff to properly treat his injury. Id. at 12-13. Plaintiff was seen several more times by mental health personnel regarding his suicide statement. MSJ, Ex B at AG0321-0324.

Dr. Branch renewed Plaintiff's Sulindac prescription in September 2014. Id. at AG0143. Plaintiff filed a request to see a doctor in October 2014 and wrote that he rarely sleeps and could not use his arm. Id. at AG0086. A nurse treated Plaintiff and noted that he was not in distress, was able to move his elbow without any limitation, and there was no redness or swelling. Id.; MSJ, Branch Decl. ¶ 20. Dr. Branch also examined Plaintiff and found he had no atrophy in his right arm and was able to remove his shirt and undershirt without any problems. Branch Decl. ¶ 20. These are signs that Plaintiff was able to use his

6

arm despite his comments. Id. ¶ 18. Plaintiff demanded shock wave therapy, but Dr. Branch did not think that was needed, and instead referred Plaintiff to a physical therapist. MSJ, Ex B at AG0033. Plaintiff also stated that he stopped walking and writing his book due to the elbow pain. Opposition, Ex. M (Docket No. 25-2).

Beginning in November 2014, Plaintiff was seen by the physical therapist and given a program of exercises. MSJ, Ex D at AG0001-0005. After beginning physical therapy, Plaintiff reported that his forearm had a better range of motion. Docket No. 26 at 4. After formal physical therapy concluded, Plaintiff was told to keep performing certain exercises on his own. MSJ, Ex D at AG0005.

Dr. Branch also referred Plaintiff for mental health services to develop coping skills related to his chronic pain. MSJ, Ex B at AG0033. Dr. Branch thought that Plaintiff may have chronic pain syndrome. Id. Plaintiff was seen by a licensed clinical social worker on November 7, 2014. MSJ, Ex E at AG0315. Plaintiff stated he was not interested in mental health services and was not open to exploring coping skills. Id.

In early 2015, Plaintiff sought medical help for carpal tunnel syndrome. MSJ, Ex B at AG0088-0090. Dr. Branch saw Plaintiff on February 3, 2015, and believed that Plaintiff may have been over-stretching or over-exercising and had irritated a nerve in his forearm. Id. at AG0037. Dr. Branch instructed Plaintiff to avoid stretching or exercising for two to four weeks and to follow up with medical. Id.

1    On May 18, 2015, Plaintiff filed a health care request 2 stating there had been no improvement in his elbow pain or carpal 3 tunnel syndrome. Id. at AG0098. Plaintiff filed no other 4 medical requests regarding his elbow in 2015.

5    In February 2016, Plaintiff requested medical attention for 6 several ailments including his elbow problem and carpal tunnel 7 syndrome. MSJ, Ex F at AG0291. Dr. Branch prescribed wrist 8 braces and ordered additional x-rays to evaluate the elbow pain. 9 Id. at AG0290. She also told Plaintiff to avoid strenuous 10 activities. Id.

11   The wrist braces broke shortly after Plaintiff received 12 them. MSJ, Branch Decl. ¶ 27. Dr. Branch states that this 13 indicates Plaintiff is engaging in strong wrist movements, a 14 cause of medial epicondylitis, which the braces are designed to 15 stop. Id. Plaintiff disputes that he broke the braces, claiming 16 they broke on their own due to being defective and poorly made. 17 Opposition at 25. Plaintiff eventually stopped using and 18 returned the braces. Id. at 26-27.

19   Dr. Branch also believes that Plaintiff's continued typing, 20 including all the typed documents involved with this litigation, 21 could be exacerbating the medial epicondylitis and carpal tunnel 22 syndrome. MSJ, Branch Decl. ¶ 25.

23   Dr. Branch believes that surgery is not the best option for 24 a patient with symptoms of pain but no objectively verifiable 25 disease. Id. ¶ 28. Dr. Branch has concerns that surgery would 26 not help the pain and could make the pain worse. Id.

## II

### A

Summary judgment is properly granted when no genuine disputes of material fact remain and when, viewing the evidence most favorably to the nonmoving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56(c); Celotex v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987). The moving party bears the burden of showing there is no material factual dispute. Celotex, 477 U.S. at 331. Therefore, the Court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Id. at 324; Eisenberg, 815 F.2d at 1289. The Court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1559 (9th Cir. 1991).

The moving party bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If the moving party meets its burden of production, the burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir.), cert. denied, 502 U.S. 994 (1991); Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1105 (9th Cir. 2000).

Material facts that would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Questions of fact regarding immaterial issues cannot defeat a motion for summary judgment. Reynolds v. County of San Diego, 84 F.3d 1162, 1168-70 (9th Cir. 1996), rev'd on other grounds by Acri v. Varian Associates, Inc., 114 F.3d 999 (9th Cir. 1997). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Anderson, 477 U.S. at 248.

B

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. Id. at 1059.

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." Id. The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial

10

pain are examples of indications that a prisoner has a "serious" need for medical treatment. Id. at 1059-60.

A defendant is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Deliberate indifference describes a state of mind more blameworthy than negligence and requires "more than ordinary lack of due care for the prisoner's interests or safety." Id. at 835. Thus, if a defendant should have been aware of the substantial risk of serious harm, but was not, then the defendant has not violated the Eighth Amendment, no matter how severe the risk. Gibson v. County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002). Consequently, in order for deliberate indifference to be established, there must exist both a purposeful act or failure to act on the part of the defendant and harm resulting therefrom. McGuckin, 974 F.2d at 1060.

A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim. Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). Similarly, a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference. Toguchi v. Chung, 391 F.3d 1051, 1058-60 (9th Cir. 2004).

**III**

For purposes of this motion, the Court finds that Plaintiff has demonstrated a serious medical need based on his medial epicondylitis. The primary issue that remains is whether Defendant was deliberately indifferent in her treatment of Plaintiff.

It is undisputed that Plaintiff is suffering from pain that has adversely affected his life. However, even though he is suffering from pain, he is still able to exercise, type, remove his clothing, and perform other basic necessities. He has a good range of motion and no signs of atrophy. It is also undisputed that Defendant has provided a great deal of treatment over six years, specifically, several different courses of treatment, including x-rays, medication, steroid shots, strengthening exercises, braces, and referrals for physical therapy and mental health treatment. It is undisputed that many of the courses of treatment provided relief to Plaintiff. Plaintiff concedes that the treatment was effective until 2013 or 2014. Opposition at 7.

Plaintiff only seeks injunctive relief in this case. While he does not set forth exactly what he seeks, it appears that he seeks to either have shock wave therapy or surgery. However, Plaintiff does not have an objectively verifiable disease, and the x-rays were negative. Defendant, in her medical opinion, does not believe that surgery is the best option for a patient with pain but no objectively verifiable disease. Defendant also has concerns that surgery would not alleviate Plaintiff's pain and could make the pain worse. While Plaintiff believes that shock wave therapy could help, he provides no evidence to support

1   this assertion.  He read about it in a medical book but has not
2   included portions of that medical text in this case.  It is
3   undisputed that the medical evidence is inconclusive about
4   whether there is any long-term benefit from shock wave therapy.
5       While Plaintiff is experiencing pain, he has improved the
6   range of motion of his elbow and can still engage in daily
7   activities.  There are no signs of atrophy.  Plaintiff also
8   engages in activities that exacerbate his injury.
9       Even viewing the evidence in a light most favorable to
10  Plaintiff, Defendant is still entitled to summary judgment.
11  While Plaintiff has presented well-thought-out arguments, he
12  ultimately presents a difference of opinion between him and
13  Defendant.  This is insufficient to establish deliberate
14  indifference.  Toguchi, 391 F.3d at 1058-60.  Defendant and other
15  medical staff have provided many different types of treatment to
16  address Plaintiff's medial epicondylitis, carpal tunnel syndrome
17  and the underlying pain both cause him.  Defendant notes that it
18  is possible that Plaintiff is suffering from chronic pain
19  syndrome.  Yet, plaintiff has repeatedly rebuffed Defendant's
20  efforts to treat him in other ways.  For example, Plaintiff has
21  refused mental health treatment to address the mental component
22  of the pain.  In addition, Plaintiff does not allege that pain
23  medication has been denied or that he has requested and been
24  denied different or stronger pain medication.  In fact he has
25  stated that while still in pain, the Sulindac medication
26  prescribed by Defendant has helped.
27
28

Plaintiff has failed to show that Defendant demonstrated a deliberately indifferent state of mind in denying him shock wave treatment and surgery to support an Eighth Amendment claim. Defendant has provided Plaintiff with a great deal of treatment, and there are legitimate medical reasons for denying the shock wave therapy and surgery.  Moreover, the care provided by Defendant has improved Plaintiff's health in many respects.

IV

For the foregoing reasons, the Court hereby orders as follows:

1.  Defendant's motion for summary judgment (Docket No. 23) is GRANTED.

2.  The Clerk shall close the file.  This order terminates Docket No. 23.

IT IS SO ORDERED.

Dated: 12/15/2016

THELTON E. HENDERSON
United States District Judge

G:\PRO-SE\TEH\CR.15\Redwine3109.sj.docx